**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BANK OF AMERICA, N.A., ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:16-cv-00604-GMN-CWH |
| vs. ) | |
| ) | **ORDER** |
| CORTEZ HEIGHTS HOMEOWNERS ) | |
| ASSOCIATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

Pending before the Court is Plaintiff Bank of America, N.A.'s ("BANA's") Partial Motion for Summary Judgment, (ECF No. 74). Defendants Cortez Heights Homeowners Association ("HOA") and Alvin Soriano filed Responses, (ECF Nos. 82, 84), and BANA filed a Reply, (ECF No. 86).

Also pending before the Court is HOA's Renewed Motion for Summary Judgment, (ECF No. 76). BANA filed a Response, (ECF No. 85), and HOA filed a Reply, (ECF No. 88).

Also pending before the Court is Alvin Soriano's Motion for Declaratory Judgment, (ECF No. 83). BANA filed a Response, (ECF No. 87), and Alvin Soriano filed a Reply, (ECF No. 89).

For the reasons discussed below, the Court **GRANTS in part and DENIES in part** BANA's Partial Motion for Summary Judgment, **DENIES** HOA's Renewed Motion for Summary Judgment Motion, and **DENIES** Alvin Soriano's Motion for Declaratory Judgment.

**I.    BACKGROUND**

This case arises from a non-judicial foreclosure sale on real property located at 5329 La Quita Hills Street, Las Vegas, Nevada, 89081 ("the Property"). (Deed of Trust, Ex. A to BANA's MSJ, ECF No. 74-1). In 2009, Luafaletele Tutu'ila ("Borrower") purchased the

1  Property with a $147,059.00 loan from Metrocities Mortgage, LLC secured by a deed of trust
2  ("the DOT"). (*Id.*).  The DOT named Metrocities as the beneficiary with an address of 15301
3  Ventura Boulevard, Suite D300, Sherman Oaks, California 91403. (*Id.*).
4      Metrocities assigned all beneficial interest in the DOT to Countrywide Bank, FSB, on
5  April 13, 2009. (Assignment, Ex. C to BANA's MSJ, ECF No. 74-3) (recorded on April 22,
6  2020).  Two weeks after that Assignment, Countrywide merged into BANA and BANA
7  thereafter received mail addressed to Countrywide. (Decl. Amy Bernal, Ex. B to BANA's MSJ,
8  ECF No. 74-2).
9      On October 5, 2012, HOA, through its agent Absolute Collection Services ("ACS"),
10 initiated foreclosure proceedings on the Property by recording a Notice of Delinquent
11 Assessment Lien due to Borrower's default on owed homeowners' association assessments.
12 (HOA's Renewed Mot. Summ. J. ("MSJ") 2:8–12, ECF No. 76); (Not. Delinquent Assessment
13 Lien, Ex. F to BANA's MSJ, ECF No. 74-6) (listing a "total amount due as of 10/05/2012 . . .
14 $918.69").  Because the assessments remained unpaid, HOA, again through ACS, then
15 recorded a Notice of Default and Election to Sell in January 2013 followed by a Notice of
16 Trustee's Sale recorded on May 23, 2013. (Not. Default, Ex. G to BANA's MSJ, ECF No. 74-
17 7); (Not. Trustee's Sale, Ex. H to BANA's MSJ, ECF No. 74-8).  With each of these Notices,
18 HOA and ACS mailed them to "Countrywide Bank c/o Metrocities" at Metrocities' Ventura
19 Boulevard address. (ACS's Resp. to Second Request for Admission, Ex. D to BANA's MSJ,
20 ECF No. 74-4).  HOA foreclosed on the Property in September 2013, and sold it to La Quinta
21 Family Trust for $12,600. (Trustee's Deed upon Sale, Ex. I to BANA's MSJ, ECF No. 74-9).
22     On March 18, 2016, BANA initiated this case by filing its Complaint against HOA,
23 ACS, and La Quinta Family Trust, asserting four causes of action: (1) quiet title; (2) breach of
24 Nevada Revised Statute ("NRS") § 116.1113; (3) wrongful foreclosure; and (4) request for
25 injunctive relief. (*See* Compl. ¶¶ 28–79, ECF No. 1).  In 2018—while proceedings in this case

were ongoing and after BANA filed a Notice of Lis Pendens on the Property—La Quinta sold the Property to Alvin Soriano. (Trustee's Deed, Ex. K to BANA's MSJ, ECF No. 74-11); (Lis Pendens, Ex. L to BANA's MSJ, ECF No. 74-12). The Court permitted Alvin Soriano to appear in this case based on that sale and transfer of interest. (Order, ECF No. 59).

On July 11, 2018, the Court entered summary judgment in favor of BANA after concluding that HOA's foreclosure of the Property occurred under a facially unconstitutional statutory scheme. (Order 8:7–9, ECF No. 59). That entry of summary judgment centered on then-binding precedent of *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017). HOA and Alvin Soriano timely appealed the Court's Order on summary judgment, and while on appeal the Ninth Circuit in *Bank of America, N.A. v. Arlington West Twilight Homeowners Association*, 920 F.3d 620 (9th Cir. 2019), held that *Bourne Valley* was no longer controlling in light of the Nevada Supreme Court's later decision in *Bank of America, N.A. v. SFR Investments Pool 1, LLC*, 427 P.3d 113 (Nev. 2018). The Circuit accordingly vacated the Court's Order on summary judgment and remanded for consideration of *Arlington West* and any alternate bases for summary judgment. (Mem. USCA, ECF No. 67). BANA, HOA, and Alvin Soriano thereafter filed the pending Motions.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable factfinder could rely to find for the nonmoving party. *See id.* "The amount

of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth; it is to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. **DISCUSSION**

BANA moves for summary judgment on its quiet title claim based on deficient notice of the foreclosure sale and a lack of due process.  BANA first argues that HOA and its agent, ACS, failed to comply with the statutory notice requirements imposed by Chapters 116 and 107

of the Nevada Revised Statutes, and that this failure resulted in prejudice to BANA warranting a declaration that the HOA's 2013 foreclosure sale on the Property is void. (BANA's MSJ 4:22–6:7, ECF No. 74).  BANA alternatively argues that the Court should set the sale aside in accord with the Nevada Supreme Court's decision in *Nationstar Mortg. LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 645 (Nev. 2017), because of the inequitable conduct and circumstances surrounding the sale. (*Id.* 6:15–8:7).  Lastly, BANA contends that the foreclosure proceedings here violated BANA's due process rights. (*Id.* 8:9–9:4).

HOA and Alvin Soriano argue in response that BANA received adequate notice of the foreclosure sale and, thus, BANA is not entitled to a declaration that the sale is void or voidable. (HOA's Renewed MSJ 3:3–15, ECF No. 76); (Mot. Declaratory Judgment at 2–5, ECF No. 83).  HOA and Alvin Soriano further argue that no part of foreclosure proceedings violated BANA's due process rights or amount to "fraud, oppression or unfairness" sufficient to warrant invalidating the sale. (HOA's Renewed MSJ 3:18–7:5, 7:8–22); (Mot. Declaratory Judgment at 2–5).

As explained below, the Court finds that a genuine dispute of material fact exists regarding whether HOA complied with statutorily required notice procedures when foreclosing on the Property.  Because each of BANA's claims center on adequate notice—or the lack thereof—summary judgment is inappropriate at this time.

**A.  Quiet Title: Declaration of the Sale as Void**

NRS Chapters 116 and 107 together create a notice scheme that requires a homeowners' association to mail notice of its impending foreclosure sale to "[e]ach . . . person with an interest whose interest or claimed interest is subordinate" using the "last known address" of the subordinate interest holders. *U.S. Bank, Nat'l Ass'n ND v. Res. Grp., LLC*, 444 P.3d 442, 446 (Nev. 2019) (quoting Nev. Rev. Stat. § 107.080(3), (4)); Nev. Rev. Stat. § 107.090(2).  Failure to comply with that statutorily required notice scheme renders the corresponding foreclosure

sale void if a person entitled to the statutorily required notice did not receive actual notice of the sale by other means and the notice deficiency prejudiced that person who held an interest in the property at the time of sale. *Res. Grp., LLC*, 444 P.3d at 446–47; *W. Sunset 2050 Tr. v. Nationstar Mortg., LLC*, 420 P.3d 1032, 1035 (Nev. 2018).  Moreover, the party seeking to void the foreclosure sale holds the burden of proving inadequate notice and prejudice. *See W. Sunset 2050 Tr.* 420 P.3d at 1034–35.

For example, in *U.S. Bank, Nat'l Ass'n ND v. Resources Group, LLC* neither the homeowners' association nor its agent, Alessi & Koenig, mailed U.S. Bank the statutorily required notices for an upcoming foreclosure—even though U.S. Bank appeared as the registered deed of trust holder for the at-issue property and had its address listed on the recorded title documents. *See* 444 P.3d at 446–49.  The association and its agent thus did not substantially comply with NRS 116 and 107's notice requirements before foreclosing. *Id.*  But before the court could declare the sale void, the court had to decide whether U.S. Bank received actual notice of sale by other means and, if not, suffered prejudice as a result.  Relevant to that decision was trial testimony from U.S. Bank's collection officer stating that U.S. Bank received no actual notice of the foreclosure and that, had it received such notice, "it would have paid the lien off and charged its borrower." *Id.* at 447.  The Nevada Supreme Court explained that this testimony, if credited, "establishes the lack of notice and prejudice needed to void the [foreclosure] sale." *Id.*  Indeed, "failing to mail the statutorily required notice of default deprives the property owner of the minimum grace period the Legislature has mandated to give the deed of trust holder (or the homeowner) time to cure, compromise, or contest the default." *Id.*  The Nevada supreme court ultimately remanded the case, however, for the district court to consider the evidence on first instance. *Id.*

      **i.**   *Substantial Compliance with Statutory Procedures*

Beginning with statutorily required notice, here ACS admits it mailed notice of HOA's

1  impending foreclosure sale only to Metrocities at the address of 15301 Ventura Boulevard,
2  Suite D300, Sherman Oaks, California 91403—even though at that time of mailing
3  Countrywide (and thus BANA) held a junior interest in the Property compared to HOA due to
4  Metrocities' 2009 Assignment of the DOT. (ACS's Resp. to Second Request for Admission,
5  Ex. D to BANA's MSJ, ECF No. 74-4); (Assignment, Ex. C. to BANA's MSJ) (listing
6  Countrywide, F.S.B. as the party receiving "all beneficial interest" under the "Note and Deed of
7  Trust").  And according to Amy Bernal, the Vice President, Senior Operations Consultant in the
8  Legal Order & Case Resolution Operations team for BANA, not only was this Ventura
9  Boulevard address never associated with Countrywide, but BANA's records contain no
10 evidence it or Countrywide otherwise received ACS's mailed notices. (Decl. Amy Bernal ¶¶ 7–
11 10) (explaining how BANA routinely received mail properly addressed to Countrywide after its
12 merger in 2009).

13         Nevertheless, a dispute of material fact exists about whether HOA or ACS knew during
14 foreclosure proceedings in 2012 through 2013 that BANA or Countrywide had different
15 addresses than Metrocities—and that foreclosure notices needed to be mailed to these different
16 addresses. *Cf. Res. Grp., LLC*, 444 P.3d at 446 (explaining how NRS 107.080(3) and (4) (2010)
17 (amended by 2019 Nev. Stat., eh. 238, § 9 (S.B. 382)), require the notice of default to be mailed
18 to junior lienholders' current addresses "*if known*" and the notice of sale to be mailed to the
19 junior lienholders' "*last known address*.") (emphasis added).  That is, the DOT lists only
20 Metrocities' Ventura Boulevard address, as does the 2009 Assignment. (DOT, Ex. A to
21 BANA's MSJ); (Assignment, Ex. C to BANA's MSJ) (listing Metrocities' Ventura Boulevard
22 address under a "mail to" heading and identifying "Countrywide Bank, F.S.B." as the party
23 receiving interest but without a corresponding mailing address).  When specifically asked about
24 knowledge of addresses for Countrywide or BANA other than Metrocities', ACS gave only
25 equivocal responses. (*See* ACS's Resp. to Second Request for Admission, Ex. D, ECF No. 74-

4) (stating, in response to the requested admission that ACS knew of other addresses for Countrywide than 15301 Ventura Boulevard, "vague and calls for a legal conclusion as to 'knew of other addresses' . . . . Deny"). Further, BANA does not provide evidence showing that its 2009 merger with Countrywide resulted in publicly accessible documents tethered to the DOT or Assignment which would have contained its address.

This dispute of fact prevents the Court from granting summary judgment to either party on the issue of substantial compliance with Nevada's statutory notice requirements. *See Matter of Estate of Sarge*, 458 P.3d 352 (Nev. 2020) (unpublished) (noting instances where a "known" address for purposes of NRS 107.080(3) and NRS 107.080(4)(a) may be different from an address in recorded documents); *Res. Grp., LLC*, 444 P.3d at 446 ("A trustee or other person conducting a foreclosure sale must send notice of default to each person entitled to it at the address the recorded documents provide for that person (or in some instances, if different, their known or last known address)."); *Dayco Funding Corp. v. Mona*, 427 P.3d 1038 (Nev. 2018) ("If Dayco [the foreclosing lender] was not aware of alternative addresses for the remaining Borrowers, then notice at the address given in the deed of trust is sufficient."); *Bank of Am., N.A. v. Madeira Canyon Homeowners' Ass'n*, No. 2:16-cv-00444-APG-NJK, 2019 WL 5963936, at *4 (D. Nev. Nov. 13, 2019) (declaring the foreclosure sale void after finding, among other things, no substantial compliance with statutory notice procedures because the foreclosing party failed to mail notice of default and sale to MERS (the noted beneficiary of record) at its recorded address).

        **ii.**    *Actual Notice and Prejudice*

Though the Court finds that a genuine dispute of material fact exists on substantial compliance with Nevada's statutory notice requirements, there is no dispute of fact on the other two issues of actual notice and prejudice. That is, Amy Bernal's Declaration states that neither BANA nor Countrywide received HOA's notices "from anyone." (Decl. Amy Bernal ¶¶ 8–10).

This evidence stands uncontroverted by Defendants.[1] Moreover, no assignment of the DOT occurred after HOA recorded its notices but before the foreclosure sale occurred. The Court thus cannot presume under the facts here that Countrywide or BANA timely received actual notice of HOA's impending foreclosure based on recordation. *Cf. W. Sunset 2050 Tr.*, 420 P.3d at 1035 (rejecting the assignee bank's quiet title claim because the homeowners' association recorded the notice of default, so the assignee of the original deed of trust beneficiary had constructive notice of the notice of default and received timely notice of sale); *Nationstar Mortg. LLC v. River Glider Ave. Tr.*, No. 19-15760, 2020 WL 3959995, at *1 (9th Cir. July 13, 2020).

Regarding prejudice, BANA's evidence reveals its normal practice upon receiving notice about one of its properties undergoing foreclosure by a homeowners' association was to "retain Miles, Bauer, Bergstrom & Winters, LLP to determine and pay the superpriority amount [owed to the HOA]." (Decl. Amy Bernal ¶¶ 10–11) (explaining that because of BANA's merger with Countrywide in 2009, BANA's normal practice of paying the superpriority amount applied with notices of foreclosure sent to Countrywide). HOA and Alvin Soriano provide no evidence to counter this declared normal practice.

Accordingly, BANA's uncontroverted evidence reveals it had no actual notice of foreclosure proceedings on the Property and that, if it did, it would have acted to tender the superiority amount to prevent its DOT from being extinguished. This means that the lone issue remaining for trial on BANA's quiet title claim is substantial compliance with statutory notice

---

[1] While Alvin Soriano claims BANA received actual notice of the HOA's foreclosure sale through publication in the newspaper and postings "in the required places," he provides no evidence supporting the purported publication or postings. Nor does he cite authority holding that newspaper publication or postings could be sufficient actual notice of the foreclosure here. (*See generally* Mot. Declaratory Judgment, ECF No. 82). Similarly, HOA only offers a conclusory statement unsupported by evidence contending "BANA was aware of the pending foreclosure proceeding." (HOA's Renewed MSJ 3:10–11, ECF No. 76). This unsupported contention is insufficient to create a genuine dispute of material fact. *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 (9th Cir. 2002).

requirements before the foreclosure sale—as noted in the previous Section of this Order. Resolution of that lone issue determines whether the Court can declare HOA's 2013 foreclosure sale of the Property void to the extent it extinguished BANA's DOT. *See, e.g.*, *Res. Grp., LLC*, 444 P.3d at 446–49; *Deutsche Bank Nat'l Tr. Co. v. Saticoy Bay LLC Series 1236 Dusty Creek St.*, No. 2:17-cv-01667-APG-EJY, 2019 WL 6898640, at *3 (D. Nev. Dec. 18, 2019) ("The sale is void as to the deed of trust because HAS did not mail the notice of sale to Deutsche and there is no evidence that Deutsche received notice of the date and time of the sale by alternative means.").

### B. Quiet Title: Equitable Reformation of the Sale

BANA requests that if the Court does not declare the foreclosure sale void, then it should "equitably reform or set aside the sale" because of irregularities in the foreclosure process amounting to "fraud, unfairness or oppression." (BANA's MSJ 6:9–13). These purported irregularities consist of a grossly inadequate sale price combined with the lack of notice concerning the foreclosure sale.

The Court finds that summary judgment is inappropriate as to BANA's alternative request for equitable reformation or setting aside the sale because, as explained above, a genuine dispute of material fact remains as to HOA's substantial compliance with statutory notice requirements. Resolving that lingering factual issue can affect whether "fraud, unfairness or oppression" occurred here warranting equitable relief.

### C. Wrongful Foreclosure and Breach of NRS 116

BANA's request for partial summary judgment focuses only on its claims for quiet title and declaratory judgment. (BANA's MSJ 1:17–19). To the extent that HOA and Alvin Soriano request summary judgment as to BANA's other claims of wrongful foreclosure and breach of NRS 116, the Court denies that request because of the lingering factual issue regarding substantial compliance with statutory notice requirements. (*Cf.* Compl. ¶¶ 56–64) (alleging

breach of NRS 116.1113 against HOA and ACS based on their failure to notify BANA that its lien was at risk from foreclosure as well as obstructing BANA's ability to protect its security interest in the property); (*id.* ¶¶ 65–72) (alleging wrongful foreclosure as to HOA and ACS "because [HOA] and its agent ACS failed to give adequate notice and an opportunity to cure the deficiency . . . . [and] "violated the good faith requirements of NRS 116.1113. . . .").[2]

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that BANA's Partial Motion for Summary Judgment, (ECF No. 74), is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that HOA's Renewed Motion for Summary Judgment, (ECF No. 76), is **DENIED**.

**IT IS FURTHER ORDERED** that Alvin Soriano's Motion for Declaratory Judgment, (ECF No. 83), is **DENIED**.

**DATED** this __23__ day of July, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court

---

[2] Because the foreclosure sale could be declared void or voidable after trial, the Court need not presently determine whether Alvin Soriano is a bona fide purchaser of the Property. *Res. Grp., LLC*, 444 P.3d at 448 ("[V]oid sale, in contrast to a voidable sale, defeats the competing title of even a bona fide purchaser for value").